UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
DANIEL E. JONES II, on behalf of himself,
individually, and on behalf of all others
similarly-situated,

                Plaintiff,

    - against -

PAWAR BROS. CORP., HARJINDER
SINGH, and USAC TOWING CORP.,

                Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-3018 (PKC) (JO)

PAMELA K. CHEN, United States District Judge:

Plaintiff Daniel E. Jones II ("Plaintiff") brings this action on behalf of himself and other similarly situated individuals pursuant to 29 U.S.C. § 216(b) against Defendants Pawar Bros. Corp. ("Pawar"), Harjinder Singh,[1] and USAC Towing Corp. ("USAC"). Plaintiff alleges that Defendants failed to pay him overtime compensation and retaliated against him for asserting his entitlement to overtime compensation, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 160 *et seq.*, §§ 200 *et seq.* Plaintiff also asserts that Defendants failed to furnish him with wage statements in accordance with the NYLL, N.Y. Lab. Law. §§ 190 *et seq.* Before the Court are Plaintiff's motion for partial summary judgment and Defendants' cross motion for summary judgment. For the reasons stated below, Plaintiff's motion for partial summary judgment is granted in part and denied in part, and Defendants' cross motion for summary judgment is denied in its entirety.

---

[1] Given that there are multiple people with the last name "Singh" in this case, the Court uses "Singh" only to refer to Defendant Harjinder Singh and addresses others with their full names.

## BACKGROUND

### I.     Relevant Facts[2]

### A.     Defendants' Businesses

Defendant Pawar is an "auto body shop in the business of repairing cars" and is owned and operated by Defendant Singh and non-party Harmit Singh, Singh's brother.  (Defendants' 56.1 Statement ("Defs.' 56.1"), Dkt. 69, ¶¶ 3, 7; Plaintiff's 56.1 Statement ("Pl.'s 56.1"), Dkt. 60, ¶ 2.)  Pawar provides auto body work and tows vehicles for repair to and from Pawar.  (Defendants' 56.1 Counterstatement ("Defs.' 56.1 Counter"), Dkt. 68, ¶ 7.)   Pawar owns two tow trucks registered to its address and bearing on the body of the truck the name Pawar and a phone number ending in 0122.  (Defs.' 56.1, Dkt. 69, ¶¶ 13–14.)  Pawar usually operates in New York City, but also tows vehicles from New Jersey approximately twice a year.  (*Id.* ¶ 17; Plaintiff's 56.1 Reply Statement ("Pl.'s 56.1 Reply"), Dkt. 63, ¶ 110; Singh 8/1/2018 Deposition, Dkt. 62-1, at 87:24–25 ("[O]nce or twice, we had an incident where we had to go out of state . . . ."); Marchand Deposition, Dkt. 62-2, at 90:15−17 ("Q. How often do [you go] to New Jersey?  A. Now and then. Usually he keeps me local like in the five boroughs."); *id.* at 91:5–6 ("Q. Would you say once a year?  A. Like maybe twice a year or something like.").)  Between 2013 and 2017, Pawar had an annual gross revenue exceeding $500,000.  (Pl.'s 56.1, Dkt. 60, ¶ 9.)

Defendant USAC is a tow truck company and is solely owned by Defendant Singh.  (Defs.' 56.1, Dkt. 69, ¶¶ 4, 8.)   USAC provides towing services, but does not provide "body work services."  (*Id.* ¶ 9.)  USAC owns two tow trucks registered to its address and bearing on the body

---

[2] Unless otherwise noted, a standalone citation to Plaintiff's 56.1 Statement, Plaintiff's 56.1 Counterstatement, Plaintiff's 56.1 Reply Statement, Defendants' 56.1 Statement, or Defendants' 56.1 Counterstatement denotes that this Court has deemed the underlying factual allegation undisputed.  Any citations to the 56.1 statements incorporate by reference the documents cited therein.  Where relevant, however, the Court may cite directly to the underlying document.

of the truck the name USAC and a phone number ending in 8093. (*Id.* ¶¶ 15–16.) USAC does not operate outside of New York. (Plaintiff's Counterstatement, Dkt. 65, ¶ 18.)

Pawar's employees include Harmit Singh, Harvinder Singh, and Ricardo Marchand. (Pl.'s 56.1, Dkt. 60, ¶ 17.) USAC does not have any employees other than Plaintiff, whose employee status is disputed.[3] (Defs.' Counter, Dkt. 68, ¶ 35.) Defendant Singh works onsite at Pawar, but takes towing request calls for USAC. (Singh 8/1/2018 Deposition, Dkt. 61-1, at 72:21–73:24; Singh 11/5/2018 Deposition, Dkt. 61-5, at 17:7–18.) On average, Singh receives one or two calls a day. (Singh 11/5/2018 Deposition, Dkt. 61-5, at 16:12–15.) Singh performs the tow jobs himself if possible, and asks other people, including Harmit Singh, Harvinder Singh, and Plaintiff, to fill in if he is not available. (*Id.* at 13:6–20, 16:21–17:4, 17:19–18:5; Singh 8/1/2018 Deposition, Dkt. 61-1, at 63:10–15; Pl.'s 56.1, Dkt. 60, ¶¶ 33–34.) USAC does not pay Harmit Singh or Harvinder Singh for any work they perform for USAC. (Singh 8/1/2018 Deposition, Dkt. 61-1, at 54:21–56:6, 141:24–142:2.)

There were occasions where Pawar used USAC trucks when Pawar's trucks were in repair or otherwise unavailable. (Defs.' 56.1 Counter, Dkt. 68, ¶ 29.) Pawar has never used any other company's trucks. (Singh 11/5/2018 Deposition, Dkt. 61-5, at 24:3–7.) USAC recommends Pawar to towing customers for repair services, but brings the vehicle to other repair shops if the customer so requests. (Defs.' 56.1 Counter, Dkt. 68, ¶¶ 7, 23.)

Defendant Singh processes payroll for both Pawar and USAC. (Pl.'s 56.1, Dkt. 60, ¶ 15.) Braj Aggarwal serves as the accountant and bookkeeper for both Pawar and USAC. (*Id.*)

---

[3] Plaintiff claims that he performed towing work for USAC and Pawar (Pl.'s 56.1, Dkt. 60, ¶ 79), whereas Defendants assert that Plaintiff only did work for USAC (Defs.' 56.1 Counter, Dkt. 68, ¶¶ 19).

Defendants do not preserve records such as towing receipts, time records, and cash payments. (Defs.' 56.1 Counter, Dkt. 68, ¶ 104.) Pawar does not maintain records about the amount of time the employees work. (Pl.'s 56.1, Dkt. 60, ¶ 105.) Defendants did not keep any records of payments to Plaintiff. (*Id.* ¶ 106.)

Pawar was sued by Tito Benitez for wage violations in 2009. (*Id.* ¶ 96.) The case was settled before any depositions were taken. (*Id.* ¶ 97.) Singh never consulted the opinions of the U.S. Department of Labor, New York State Department of Labor, or any attorneys, nor did he do any research, with respect to the compensation of his workers. (*Id.* ¶¶ 101–02.)

## B.    Plaintiff's Relationship with Defendants

Before the commencement of this action, Plaintiff drove tow trucks for USAC. (Defs.' 56.1 Counter, Dkt. 68, ¶¶ 19, 90.) The parties dispute whether Plaintiff also drove tow trucks for Pawar. (*Id.* ¶ 19.) When Singh was not available to perform towing himself, he "would call [Plaintiff] to come in." (Pl.'s 56.1, Dkt. 60, ¶ 79.) They would agree on a flat rate for the day, which would be paid in cash that day. (Singh 8/1/2018 Deposition, Dkt. 61-1, at 166:8−167:20, 209:12–15.) Plaintiff worked for Singh at least "three or four times a month." (Pl.'s 56.1, Dkt. 60, ¶ 78.) There were occasions when Singh requested Plaintiff, but Plaintiff was busy working for other companies and did not come in. (Defs.' 56.1 Counter, Dkt. 68, ¶¶ 81, 83; Singh 8/1/2018 Deposition, Dkt. 61-1, at 147:4−18.) When Plaintiff was driving for Defendants, any accident would be covered under Defendants' insurance policy. (Defs.' 56.1 Counter, Dkt. 68, ¶ 85.) Plaintiff was not responsible for repairing the tow trucks. (Singh 8/1/2018 Deposition, Dkt. 61-1, at 201:8−13.) Singh stopped calling Plaintiff for work because Plaintiff initiated this action. (Defs.' 56.1 Counter, Dkt. 68, ¶ 90.)

## II.  Procedural History

On May 18, 2017, Plaintiff filed the instant action on behalf of himself and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b).  (Complaint, Dkt. 1.)  Defendants failed to timely appear, and Plaintiff obtained a certificate of default on August 30, 2017.  (*See* Clerk's Entry of Default, Dkt. 8.)  On December 1, 2017, Defendants entered their appearance and expressed their intention to move to vacate the certificate of default.  (*See* Notice of Appearance, Dkt. 17; Defendants' letter motion for extension of time to file motion to vacate certificate of default, Dkt. 18.)  Upon Plaintiff's consent (*see* Plaintiff's response, Dkt. 19), on December 5, 2017, the Honorable James Orenstein vacated the entry of default (Dec. 5, 2017 Order).  On the same day, Defendants filed a pre-motion conference request for a proposed motion to dismiss.  (Defendants' letter motion for pre-motion conference, Dkt. 20.)  However, on December 12, 2017, prior to a pre-motion conference being held, Defendants filed their motion to dismiss for failure to state a claim.  (Defendants' motion to dismiss for failure to state a claim, Dkt. 22.)  On January 10, 2018, the Court held a pre-motion conference, at which it denied Defendants' motion to dismiss.  (Jan. 10, 2018 Minute Order.)

Defendants filed their answer on January 23, 2018.  (Answer, Dkt. 29.)  On February 14, 2018, the Honorable James Orenstein held a status conference and granted Plaintiff's motion for conditional certification of a collective action.  (*See* Minute Entry, Dkt. 33; Feb. 14, 2018 Order.)  On September 7, 2018, Plaintiff filed his amended complaint, joining USAC as a Defendant.  (*See* Amended Complaint, Dkt. 43.)  On September 24, 2018, Defendants filed their answer to the amended complaint.  (*See* Answer to Amended Complaint, Dkt. 46.)  On November 20, 2018, discovery was closed.  (Minute Entry, Dkt. 48.)  Plaintiff and Defendants cross-moved for summary judgment, and the motions were fully briefed on May 8, 2019.  (*See* Dkts. 58−69.)

## STANDARD OF REVIEW

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (noting that summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial "burden of establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (per curiam). Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the non-moving party is insufficient; "there must be evidence on which the jury could reasonably find for the" non-movant. *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (internal quotation marks and citation omitted). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (internal quotation marks, citation, and emphasis omitted).

In determining whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the non-moving party. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144,

158–59 (1970).  However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson*, 477 U.S. at 247–48 (emphasis omitted).  "The same standard of review applies when the court is faced with [a] cross-motion[] for summary judgment."  *Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009) (internal quotation marks and citation omitted).  When evaluating a cross-motion for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration.  *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## DISCUSSION

### I.     FLSA Coverage[4]

Plaintiff seeks summary judgment as to Defendants Pawar's and USAC's coverage under the FLSA as a single enterprise.  Defendants seek dismissal of the case based on Plaintiff's inability to establish the interstate commerce element for FLSA coverage.

---

[4] As a preliminary matter, Plaintiff argues in his reply brief that Defendants fail to address the majority of issues raised in Plaintiff's motion for partial summary judgment and, therefore, Defendants have waived their opposition to these issues. (Plaintiff's Reply Brief, Dkt. 64, at 4−5.) However, the Court "may not grant [a summary judgment] motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (emphasis, internal quotation marks, and citations omitted).

At the same time, "in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014). Plaintiff seeks to dismiss Defendants' good faith affirmative defense, and Defendants have failed to oppose that aspect of Plaintiff's motion. Therefore, the Court deems the good faith defense abandoned. *See Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 85–86 (E.D.N.Y. 2019) (deeming affirmative defenses attacked by plaintiff and unaddressed by defendants abandoned); *Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 397 (S.D.N.Y. 2014) (same), *aff'd sub nom. APEX Employee Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*, 725 F. App'x 4 (2d Cir. 2018).

The employee bears the burden of establishing that he is covered under the FLSA either because he is "engaged in commerce or in the production of goods for commerce," or because he is "employed by an enterprise engaged in commerce or in the production of goods for commerce." *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 84 (E.D.N.Y. 2010). "These bases for coverage under the FLSA are referred to as 'individual' or 'enterprise' coverage, respectively." *Bowrin v. Catholic Guardian Soc.*, 417 F. Supp. 2d 449, 457 (S.D.N.Y. 2006). Under the theory of enterprise coverage, "*all* employees in a particular business unit that constitutes an 'enterprise,' are covered by the [FLSA], irrespective of their individual coverage status." *Id.* (emphasis in original).

### A.     Single Enterprise

An entity constitutes an "enterprise" under the FLSA where "the related activities [are] performed (either through unified operation or common control) by any person or persons . . . for a common business purpose . . . ." 29 U.S.C. § 203(r)(1). "Courts use a three-part test to determine when an entity is an enterprise: (1) the entity or entities must engage in related activities, (2) performed through unified operation or common control, (3) for a common business purpose." *Berrezueta v. Royal Crown Pastry Shop, Inc.*, No. 12-CV-4380 (RML), 2014 WL 3734489, at *4 (E.D.N.Y. July 28, 2014).

---

Furthermore, the Court finds that Defendants have failed to put forward any evidence, let alone "plain and substantial evidence," that they made any effort to "ascertain what the FLSA requires and to comply with it." *See Gayle v. Harry's Nurses Registry, Inc.*, No. 07-CV-4672 (NGG) (MDG), 2012 WL 4174401, at *5 (E.D.N.Y. Sept. 18, 2012) (internal quotation marks, alteration, and citation omitted), *aff'd*, 594 F. App'x 714 (2d Cir. 2014). In addition, "[c]ourts have not substantively distinguished the FLSA's standard from the current NYLL standard of good faith." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 503 (S.D.N.Y. 2017) (internal quotation marks, citation, and alterations omitted), *aff'd*, 752 F. App'x 33 (2d Cir. 2018). Therefore, Defendants' good faith defense under the FLSA and the NYLL is dismissed.

"First, activities of more than one entity are related where the entities provide mutually supportive services to the substantial advantage of each entity." *Yang v. Everyday Beauty Amore Inc.*, No. 18-CV-729 (BMC), 2018 WL 4783968, at *3 (E.D.N.Y. Oct. 3, 2018) (internal quotation marks and alteration omitted) (quoting *Berrezueta*, 2014 WL 3734489, at *6). "Entities which provide mutually supportive services to the substantial advantage of each entity are operationally interdependent and may be treated as a single enterprise under the [FLSA]." *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 525 (S.D.N.Y. 1998). "Second, common control exists where the performance of the described activities [is] controlled by one person or by a number of persons, corporations, or other organizational units acting together." *Yang*, 2018 WL 4783968, at *3 (internal quotation marks, citations, and alteration omitted). "Common ownership standing alone does not bring unrelated activities within the scope of the same enterprise. However, if it appears that there is a reasonable relationship of all the activities to a single business purpose a different conclusion might be warranted." *Berrezueta*, 2014 WL 3734489, at *6 (ellipsis, internal quotation marks, and citation omitted). "Finally, a common business purpose can be found in commercial activity in competition with other private entrepreneurs." *Yang*, 2018 WL 4783968, at *3 (internal quotation marks and citation omitted). "A finding of a common business purpose generally requires evidence of two entities engaging in complementary businesses that are substantially operationally interdependent." *Rosario v. Mis Hijos Deli Corp.*, No. 15-CV-6049 (LTS) (DCF), 2018 WL 4636822, at *6 (S.D.N.Y. Sept. 27, 2018) (citation omitted).

Pawar and USAC engage in related activities. With the exception of Plaintiff, whose employee status is contested, USAC does not have its own employees. (Defs.' Counter, Dkt. 68, ¶ 35.) USAC depends on Singh, Pawar's employees, and Plaintiff to perform the tow jobs that USAC receives. (Pl.'s 56.1, Dkt. 60, ¶ 34.) USAC does not pay Pawar's employees for the work

they perform for USAC. (Singh 8/1/2018 Deposition, Dkt. 61-1, at 55:21−56:6, 141:24−142:2.) Such overlap of employees supports USAC's operational dependence on Pawar. *See Cui v. E. Palace One, Inc.*, No. 17-CV-6713 (PGG), 2019 WL 4573226, at *11–12 (S.D.N.Y. Sept. 20, 2019) (denying motion to dismiss on the grounds that the defendants were not operationally interdependent, where the defendants required the delivery people to "service[] all locations, not just the restaurant by which they were formally employed"); *cf. Garcia v. Serpe*, No. 08-CV-1662 (VLB), 2012 WL 380253, at *5 (D. Conn. Feb. 6, 2012) ("Plaintiffs have not asserted that there was any overlap of employees between the restaurant and the cleaning or landscaping businesses or that the landscaping or cleaning businesses paid for the restaurant's expenses."); *Robles v. Argonaut Rest. & Diner, Inc.*, No. 05-CV-5553 (JSR), 2009 WL 3320858, at *2 (S.D.N.Y. Oct. 9, 2009) ("[The plaintiff] has not demonstrated that employees were employed interchangeably among the two businesses, thus providing mutually supportive service to both establishments."). Pawar's dependence on USAC is demonstrated by the fact that Pawar uses USAC trucks when Pawar's trucks are unavailable (Defs.' 56.1 Counter, Dkt. 68, ¶ 29) and that when USAC provides towing for a vehicle in need of repair, USAC would recommend Pawar for repair services if the customer does not have a chosen repair shop (*id.* ¶ 7). Therefore, Pawar operationally depends on USAC for USAC's equipment and support in business development. *See Berrezueta*, 2014 WL 3734489, at *6 (denying defendants' summary judgment that defendants were not a single enterprise, where defendants, *inter alia*, "occasionally shared ingredients at no cost"); *cf. Garcia*, 2012 WL 380253, at *5 ("Plaintiffs have not indicated that the restaurant provided any services to the landscaping or cleaning businesses such that 'there was the provision of mutually supportive services to the substantial advantage of each entity.'" (internal quotation marks and citation omitted)).

Pawar and USAC are under the common control of Singh. Singh owns USAC and jointly owns Pawar with his brother. (Defs.' 56.1, Dkt. 69, ¶¶ 3–4.) Singh is in charge of taking towing requests and assigning drivers. (Defs.' 56.1 Counter, Dkt. 68, ¶¶ 32–34.) He is also solely responsible for managing Pawar, including setting hours of operation, prices, work schedule, and employee compensation. (*Id.* ¶¶ 46, 48–52.) "[T]here is a common control center with the ultimate power to make binding decisions for all the units of the enterprise." *Archie*, 997 F. Supp. at 527 (internal quotation marks and citation omitted). This conclusion is also bolstered by the fact that Pawar and USAC share administrative services with regard to payroll and bookkeeping. (Defs.' 56.1 Counter, Dkt. 68, ¶ 15.) *See Archie*, 997 F. Supp. at 527 (finding common control where defendants shared management and administrative services).

USAC and Pawar share a common business purpose. USAC complements Pawar's business by referring its customers to Pawar and providing its trucks as backup, whereas Pawar complements USAC by providing readily available workers. It is irrelevant that USAC only performs a subset of the business activities of Pawar. *See Jacobson v. Metro. Switchboard Co.*, No. 05-CV-2224 (JFB) (RML), 2007 WL 1774911, at *6 (E.D.N.Y. June 18, 2007) (finding common business purpose when one entity only performs a subset of business activities of the other and the entities shared equipment). The Court has already found that the two companies are operationally interdependent and therefore finds that they share a common business purpose. *See Rosario*, 2018 WL 4636822, at *6 ("A finding of a common business purpose generally requires evidence of two entities engaging in complementary businesses that are substantially operationally interdependent." (citation omitted)).

Thus, based on the undisputed facts, Plaintiff has established that Pawar and USAC are a single enterprise.

## B.     Interstate Commerce

The interstate commerce requirement is satisfied by a showing that the enterprise "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an "annual gross volume of sales made or business done [] not less than $500,000." 29 U.S.C. § 203(s)(1)(A). "The test to be an enterprise engaged in commerce is met so long as a defendant's employees merely handled equipment or supplies that originated out-of-state." *Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 14-CV-5269 (ARR) (JO), 2016 WL 5092588, at *15 (E.D.N.Y. Sept. 19, 2016) (internal quotation marks, citations, and alteration omitted).

Here, "it is inconceivable that none of the trucks or other materials used by [Defendants' employees] in their line of work originated outside of New York." *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120 (JG), 2013 WL 3010810, at *13 (E.D.N.Y. June 18, 2013); *see id.* (finding towing company engaged in interstate commerce). Indeed, Defendants admit that Pawar occasionally tows vehicles from New Jersey. (Pl.'s 56.1 Reply, Dkt. 63, ¶ 110.) Additionally, because Defendants do not dispute the fact that Pawar's annual gross revenue exceeds $500,000 (Defs.' 56.1 Counter, Dkt. 68, ¶ 9), the Court finds that the single enterprise of Pawar and USAC is engaged in interstate commerce.

Accordingly, the Court grants Plaintiff's summary judgment on the issue of Pawar and USAC being covered under the FLSA as a single enterprise and denies Defendants summary judgment with respect to their argument that Defendants do not satisfy the interstate commerce requirement under the FLSA.

## II.     Employer/Employee Relationship

Plaintiff seeks summary judgment on the issue of Defendants being Plaintiff's joint employers under the FLSA and the NYLL. Because the Court finds a triable issue of fact with regard to Plaintiff's employment relationship with USAC, the Court denies that aspect of Plaintiff's motion.

The FLSA defines an employer to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d); *see also id.* § 203(g) (defining "employ" as "to suffer or permit to work"). "The Supreme Court has observed . . . that the 'striking breadth' of the FLSA's definition of 'employ' 'stretches the meaning of "employee" to cover some parties who might not qualify as such under a strict application of traditional agency law principles . . . .'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)). "In the Second Circuit, courts generally interpret the statutory standard for employer status under NYLL to be nearly identical to that of the FLSA." *Loo v. I.M.E. Rest., Inc.*, No. 17-CV-2558 (ARR) (RER), 2018 WL 4119234, at *4 (E.D.N.Y. Aug. 29, 2018) (internal quotation marks, citations, and alterations omitted); *see Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 444 (S.D.N.Y. 2017) ("[T]here is general support for giving FLSA and the New York Labor Law consistent interpretations." (internal quotation marks and citations omitted)).

The Second Circuit has "identified different sets of relevant factors based on the factual challenges posed by particular cases." *Barfield*, 537 F.3d at 142. To determine whether an individual is an employee, as opposed to an independent contractor who is not covered under the FLSA, the Court considers

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the

13

degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1988). The Court must focus on "the totality of the circumstances" to determine "whether, as a matter of economic reality, the workers depend on someone else's business for the opportunity to render service or are in business for themselves." *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017) (internal quotation marks and citations omitted).

This fact-intensive inquiry has led courts in cases involving drivers to reach different results depending on the particulars of a given case. *See Saleem v. Corp. Transp. Grp., Ltd.*, 52 F. Supp. 3d 526, 536–37 (S.D.N.Y. 2014) (collecting cases), *order clarified*, No. 12-CV-8450 (JMF), 2014 WL 7106442 (S.D.N.Y. Dec. 9, 2014). The Second Circuit in *Thomas v. TXX Servs., Inc.*, 663 F. App'x 86 (2d Cir. 2016) (summary order), vacated summary judgment on the issue of employment relationship on the grounds that the parties disputed, *inter alia*, the amount of control the defendant exerted over the plaintiff, the level of discretion the plaintiff had in performing the work and taking breaks, and the possibility of the plaintiff working for other companies. *Thomas*, 663 F. App'x at 89−90. In contrast, the court in *Campos v. Zopounidis*, No. 09-CV-1138 (VLB), 2011 WL 2971298 (D. Conn. July 20, 2011), found, at the summary judgment phase, that the plaintiff was an employee of defendant, based on the facts that the plaintiff had worked as a delivery person on a permanent basis over a substantial period of time, that the defendant exercised control over the plaintiff in terms of work schedule and conditions of employment, that the work did not require skill or independent initiative, and that the work was integral to the defendant's business. *Campos*, 2011 WL 2971298, at *9.

Here, there are sufficient material facts in dispute with regard to Plaintiff's relationship with USAC so as to preclude a finding as a matter of law that Plaintiff was an USAC employee.[5] The first factor, *i.e.*, the degree of control exercised by the employer over the worker, does not weigh in favor of employee status. For this factor, it is particularly relevant "whether a worker is free to set his own schedule and take vacations when he wished" and whether the worker is free to work for other competing companies. *Saleem*, 52 F. Supp. 3d at 537−38 (internal quotation marks and citation omitted); *see Saleem*, 854 F.3d at 141 ("The fact that [p]laintiffs could (and did) work for [defendant's] business rivals and transport personal clients while simultaneously maintaining their franchises without consequence suggests, in two respects, that [defendant] exercised minimal control over [p]laintiffs. First, on its face, a company relinquishes control over its workers when it permits them to work for its competitors. Second, when an individual is able to draw income through work for others, he is less economically dependent on his putative employer. This lack of control, while not dispositive, weighs in favor of independent contractor status."). Singh testified, and Plaintiff does not provide contrary testimony, that at times Plaintiff declined to come in and that Plaintiff worked for other companies. (Defs.' 56.1 Counter, Dkt. 68, ¶ 81.) Plaintiff relies on the fact that when he was hired for the day, he worked the same shifts as Defendants' other employees (Pl.'s 56.1, Dkt. 60, ¶ 84), but this fact reflects only some degree of control by Defendants and, in itself, is insufficient to establish an employment relationship. Indeed, the fact

---

[5] Plaintiff also argues that Defendants are bound by the concession their counsel made at a court proceeding before the Honorable James Orenstein that USAC was Plaintiff's employer. (Pl.'s Br., Dkt. 59, at 15.) However, the Court disagrees with Plaintiff's characterization of that statement. Defendants' counsel represented that Plaintiff did not do work for Pawar and only did work for USAC. (Transcript of Pretrial Conference, Dkt. 61-14, at 4:21−22 ("Mr. Rubin: And that he did - - he would be on call. He would occasionally do work for USAC."); *id.* at 5:19−22 (The Court: . . . Was USAC the employer or not? Mr. Rubin: Your Honor, they would employ him on an on-call relationship[.]").) The Court does not read these representations as sufficiently conceding the employment relationship between Plaintiff and Defendants.

that Plaintiff could choose not to come in when called by Singh and that Plaintiff worked for other towing companies is more consistent with an independent contractor relationship.

The second factor, *i.e.*, the worker's opportunity for profit or loss and his investment in the business, weighs in favor of Plaintiff. USAC undertook significantly more economic risks than Plaintiff, providing tow trucks and paying for repairs and insurance. (*See* Defs.' 56.1 Counter, Dkt. 68, ¶ 85; Singh 8/1/2018 Deposition, Dkt. 61-1, at 201:8−13.) Plaintiff's investment was limited to his time, which was less than that of most drivers, who usually provided their own vehicles. *See Campos*, 2011 WL 2971298, at *6–7 (finding on summary judgment that plaintiff-driver was an employee even though he supplied a vehicle, because plaintiff's investment was still less than defendant's).

The third factor, *i.e.*, the degree of skill and independent initiative required to perform the work, does not weigh decidedly in either party's favor. Although "driving is not a 'specialized skill,'" *Saleem*, 52 F. Supp. 3d at 541, Singh commented that he chose Plaintiff because "[h]e was a good driver" (Singh 8/1/2018 Deposition, Dkt. 61-1, at 210:15) and "[h]e never had any crashes when he drove [Singh's] trucks" (*id.* at 165:16−17). Some courts have found that "driving a truck containing large loads of cargo requires a significant degree of skill." *Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 609 (E.D.N.Y. 2012) (citation omitted). However, more generally, "courts have noted that skill in itself is not indicative of independent contractor status where the workers do not exercise significant initiative in locating work opportunities." *Campos*, 2011 WL 2971298, at *8. Here, Plaintiff did not exercise independent initiative with respect to obtaining tow jobs because all towing requests were processed through and directed by Singh. (Singh 11/5/2018 Deposition, Dkt. 61-5, at 17:7−18.) Under these circumstances, "this factor does not provide a significant indication of the type of working arrangement that existed between the

parties." *Arena v. Plandome Taxi Inc.*, No. 12-CV-1078 (DRH) (WDW), 2014 WL 1427907, at *6 (E.D.N.Y. Apr. 14, 2014); *see id.* (finding that the third factor does not weigh in favor of either party, where plaintiff was required to maintain a special driver's license but defendants made all trip arrangements).

The fourth factor, *i.e.*, the permanence or duration of the working relationship, favors a finding of independent contractor status, because even though USAC had the power to terminate the relationship and did so (Defs.' 56.1 Counter, Dkt. 68, ¶ 90), the fact that Plaintiff could refuse work creates an inference of independence. *See Arena*, 2014 WL 1427907, at *6. The parties do not dispute that Plaintiff worked for USAC for at least two years, but that fact alone does not support a finding of employee status, given that the work was sporadic and on-call, and Plaintiff could terminate the relationship at will. *See Saleem*, 52 F. Supp. 3d at 542 (noting that the fact that the driver could terminate the agreement at will favors a finding of independent contractor status). The fact that Singh and Plaintiff negotiated the compensation each time Plaintiff worked for Defendants (Singh 8/1/2018 Deposition, Dkt. 61-1, at 166:8−167:20), to which Singh testified and Plaintiff did not contradict, suggests the existence of an independent contractor relationship. *See Saleem*, 52 F. Supp. 3d at 542−43 ("Perhaps most fundamentally, . . . each job was separately contracted, suggesting the existence of an independent contractor relationship." (internal quotation marks and citation omitted)).

Finally, the fifth factor, *i.e.*, the extent to which the work was an integral part of the employer's business, neither compels nor dispels a finding of employee status, because even though Plaintiff driving a tow truck was integral to Defendants' towing business, he was easily replaced, just as he was the replacement for others. *Browning*, 885 F. Supp. 2d at 610 (finding plaintiff's work integral but easily replaceable).

In sum, while some of the factors lean one way or the other, they do not provide a definitive answer regarding Plaintiff's employee status, due to insufficient or disputed facts. A reasonable jury could conclude that Plaintiff was not an employee of Defendants under the FLSA, but performed work for them instead as an independent contractor. Accordingly, an evaluation of the factors, as well as the totality of the circumstances, demonstrate that a triable issue of fact exists as to whether Plaintiff was an USAC employee for purposes of the FLSA and that, therefore, summary judgment cannot be granted regarding this issue. *See Arena*, 2014 WL 1427907, at *7 (denying summary judgment on the grounds that a triable issue of fact existed as to the employment status). Because the standard for employee status under the NYLL is substantially the same as that under the FLSA, summary judgment with regard to Plaintiff's employee status under the NYLL is inappropriate for the same reasons.

Accordingly, the Court denies Plaintiff's motion for summary judgment on the issue of his employee status for purposes of his FLSA and NYLL claims.

## III. Failure to Provide Wage Statements

Plaintiff seeks summary judgment on Defendants' statutory liability for failure to provide wage statements under the NYLL.

New York's Wage Theft Prevention Act, amended on February 27, 2015, entitles employees to statutory damages for violation of the wage statement requirement of $250 per workday that the violation occurred, not to exceed $5,000. *See* N.Y. Lab. Law §§ 195, 198(1-d). "If the employer can demonstrate that a worker . . . [was] an independent contractor instead of [] an employee, . . . the worker is not entitled to a wage statement under N.Y. Lab. Law § 195." *Kloppel v. Sears Holdings Corp.*, No. 17-CV-6296 (FPG), 2018 WL 1089682, at *2 (W.D.N.Y. Feb. 28, 2018). It is undisputed that Defendants never provided Plaintiff with any written

statements regarding his compensation. (Defs.' Counter, Dkt. 68, ¶ 109.) By Singh's own admission, as of August 2018, Plaintiff had worked for Defendants for approximately the last "two or three years" (Singh 8/1/2018 Deposition, Dkt. 61-1, at 159:6) and Plaintiff worked "three or four times a month" (Defs.' Counter, Dkt. 68, ¶ 78.). Therefore, at the very least, there were 72 work days[6] where Plaintiff was not provided with a wage statement, entitling him to the maximum statutory damages of $5,000. Accordingly, the Court grants Plaintiff's motion for summary judgment with respect to his claim for statutory damages under the NYLL, provided that Plaintiff is found to be Defendants' employee. If a jury so finds, Plaintiff is entitled to statutory damages in the amount of $5,000.

## IV.    Retaliation

Plaintiff seeks summary judgment with respect to his claim of retaliation under the FLSA and the NYLL.

"NYLL § 215 and FLSA § 15(a)(3) are 'nearly identical' provisions." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 471 n.18 (S.D.N.Y. 2008) (citation omitted). The FLSA's anti-retaliation provision makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA] . . . ." 29 U.S.C. § 215(a)(3). Independent contractors, by contrast, "fall[] outside the protections of the FLSA and NYLL anti-retaliation protections." *See Fernandez v. Kinray, Inc.*, 406 F. Supp. 3d 256, 265 (E.D.N.Y. 2018); *Sellers v. Royal Bank of Canada*, No. 12-CV-1577 (KBF), 2014 WL 104682, at *9 (S.D.N.Y. Jan. 8, 2014) (finding that

---

[6] This calculation is based on a conservative assumption that Plaintiff worked three times per month for a total of 24 months (*i.e.*, two years). At the statutory rate of $250/day, the total damages for which Defendants are liable under § 198(1-d) of the NYLL is $6,000, which is in excess of the statutory maximum of $5,000.

independent contractor status precludes FLSA and NYLL claims), *aff'd*, 592 F. App'x 45 (2d Cir. 2015). "At the summary judgment stage, courts address FLSA retaliation claims under the familiar 'burden-shifting' framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*," 411 U.S. 792 (1973). *Torres*, 628 F. Supp. 2d at 471. At the first step, a plaintiff must establish a *prima facie* claim of unlawful retaliation by showing: "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Quintanilla v. Suffolk Paving Corp.*, No. 09-CV-5331 (AKT), 2019 WL 885933, at *19 (E.D.N.Y. Feb. 22, 2019). "[T]he burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If successful, the burden shifts back to the employee to produce evidence showing that the employer's proffered reason is pretextual." *Id.* (citations omitted).

By Defendants' own admission, Plaintiff stopped receiving calls from Singh—in effect, terminating Plaintiff—because of the filing of this lawsuit. (Defs.' 56.1 Counter, Dkt. 68, ¶ 90.) Such action would "dissuade[] a reasonable worker from making or supporting similar charges" and thus constitutes an adverse employment action. *See Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (internal quotation marks, citation, and alterations omitted). Defendants have not pointed to any evidence that would support a legitimate, non-retaliatory reason, and have, in fact, admitted to the retaliation. (*See* Defs.' 56.1 Counter, Dkt. 68, ¶ 90.) However, as previously discussed, the question of whether Plaintiff was an employee of Defendants under the FLSA and the NYLL and is covered by the anti-retaliation provisions of those statutes remains in dispute. Accordingly, the Court finds that, *in the event* a jury finds that Plaintiff was an employee of Defendants, his termination violated the anti-retaliation clauses under the FLSA and the NYLL.

## V.    Statute of Limitations

Plaintiff seeks a finding that Defendants acted willfully, thus extending the statute of limitations under the FLSA from two to three years.

"A cause of action under the FLSA accrues on the regular payday immediately following the work period for which services were rendered and not properly compensated." *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337 (S.D.N.Y. 2005).  A plaintiff must raise a FLSA claim within two years, but the statute of limitations is extended to three years, if the plaintiff can show a willful violation.  *See* 29 U.S.C. § 255(a); *Saunders v. City of New York*, 594 F. Supp. 2d 346, 358–59 (S.D.N.Y. 2008).  "[A] violation is willful if the 'employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Yang*, 427 F. Supp. 2d at 337 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  "Courts in this Circuit have generally left the question of willfulness to the trier of fact." *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008) (collecting cases).  "When courts have decided the question of willfulness at the summary judgment stage, either the FLSA violation was due to a misclassification of the plaintiff as being exempt, or there existed no genuine dispute that the employer had been on notice that it was subject to the FLSA." *Eschmann v. White Plains Crane Serv., Inc.*, No. 11-CV-5881 (KAM) (VVP), 2014 WL 1224247, at *5 (E.D.N.Y. Mar. 24, 2014) (internal quotation marks and citations omitted).  Notice is provided when the theory under which the defendant-employer is subject to the FLSA has been set forth for the defendant.  *See Brock*, 840 F.2d at 1061–62 (finding willfulness because defendants were on notice due to earlier violations); *Cox v. Town of Poughkeepsie, N.Y.*, 209 F. Supp. 2d 319, 328 (S.D.N.Y. 2002) (finding willfulness because defendants were on notice due to attorney's letter setting out basis for FLSA violations).

As the Court previously found, there are material facts in dispute about Plaintiff's employee status under the FLSA, which may be dispositive of this action. Furthermore, the Court finds that there are disputed issues of material fact regarding Defendants' knowledge or reckless disregard of their obligations under the FLSA. Plaintiff points to Singh's admission that he never sought consultation regarding, or researched, his companies' obligations under the FLSA. (Pl.'s 56.1, Dkt. 68, ¶¶ 101−02.) However, there is no undisputed evidence on the record that Defendants were on notice that they were subject to the FLSA. Plaintiff relies on the fact that Pawar was sued by a worker for FLSA violations in 2009, but that case did not involve USAC, which Defendants contend should not be subject to the FLSA. The first undisputed notice of violative conduct under the FLSA is the filing of this lawsuit, and therefore the Court cannot find on summary judgment that Defendants "knew or had reason to know that it was or might have been subject to the FLSA." *See Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F. Supp. 860, 870 (S.D.N.Y. 1984). Drawing all inferences in favor of Defendants, the Court cannot determine willfulness, as a matter of law, from Singh's decades of experience as businessman and employer either. *Eschmann*, 2014 WL 1224247, at *6–7 (denying plaintiff's summary judgment motion and finding that business experience alone is insufficient to establish willfulness).

Accordingly, the Court denies summary judgment on the issue of Defendants' willfulness and the applicable statute of limitations under the FLSA.

## VI. *Anderson v. Mt. Clemens Pottery* Burden Shifting Framework

Plaintiff seeks a finding that Defendants failed to maintain accurate records and that, therefore, the burden-shifting framework from *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680 (1946), applies.

"In a FLSA case, it is the employee's burden to prove that he performed work for which he was not properly compensated." *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 370 (S.D.N.Y. 2014) (citation omitted). However,

> [w]here an employer keeps inaccurate or inadequate records, an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. In other words, if an employer keeps inaccurate or inadequate records, the plaintiff need only offer a reasonable estimate of his damages. Once the employee has offered his estimate, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. at 687−88) (internal quotation marks and other citation omitted).

Defendants concede that Defendants do not preserve records such as towing receipts, time records, and cash payments, that Pawar does not maintain records about the amount of time the employees work, and that there is no record that documents the payments admittedly made to Plaintiff. (Defs.' 56.1 Counter, Dkt. 68, ¶ 104; Pl.'s 56.1, Dkt. 60, ¶¶ 105−06.) Therefore, the Court finds as a matter of law that Defendants' time records are inadequate and that the *Anderson v. Mt. Clemens Pottery* burden-shifting framework should apply, that is, at trial, Plaintiff need only offer an estimate of the damages he allegedly suffered, and the burden then shifts to Defendants to "to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from [Plaintiff's] evidence." *McGlone*, 49 F. Supp. 3d at 371.

## CONCLUSION

For the reasons set forth above, the Court (1) grants summary judgment to Plaintiff on the issue of Defendants USAC and Pawar being a single enterprise covered under the FLSA and denies

summary judgment to Defendants on the issue of whether they are engaged in interstate commerce—the Court finds, as a matter of law, that they are; (2) denies summary judgment on Plaintiff's claim that he was Defendants' employee under the FLSA and the NYLL; (3) grants summary judgment to Plaintiff with respect to his entitlement to statutory damages of $5,000 under the NYLL, assuming that Plaintiff was an employee; (4) grants summary judgment to Plaintiff with respect to his retaliation claims under the FLSA and NYLL, assuming that Plaintiff was an employee of Defendants; (5) denies summary judgment to Plaintiff with respect to Defendants' willfulness and the applicable statute of limitations under the FLSA; and (6) grants summary judgment to Plaintiff on the application of the *Anderson v. Mt. Clemens Pottery* burden-shifting framework at trial. The parties shall file a joint pre-trial order that complies with the Court's Individual Rules within thirty (30) days from the date of this Memorandum and Order.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 22, 2020
      Brooklyn, New York