UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DANIEL E. JONES II, on behalf of himself, individually, and on behalf of all others similarly-situated,

                   Plaintiff,

        - against -

PAWAR BROS. CORP., HARJINDER SINGH, and USAC TOWING CORP.,

                   Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-3018 (PKC) (SJB)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Daniel E. Jones II ("Plaintiff") brought this action for damages and attorney's fees and costs on behalf of himself and other similarly situated individuals pursuant to 29 U.S.C. § 216(b) against Defendants Pawar Bros. Corp. ("Pawar"), Harjinder Singh, and USAC Towing Corp. ("USAC"). Plaintiff's lawsuit alleged that Defendants failed to provide him with overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 160 *et seq.*, §§ 200 *et seq.* On January 22, 2020, the Court, in ruling on Plaintiff's summary judgment motion, held that if a jury found Plaintiff was an "employee" of Defendants under the FLSA and the NYLL and he "willfully" violated the FLSA, Defendant would be responsible for all of Plaintiff's requested relief, including $5,000 in statutory damages. *See Jones v. Pawar Bros. Corp.* (*Jones I*), 434 F. Supp. 3d 14, 30 (E.D.N.Y. 2020); *see also* Dkt. 71. On September 16, 2022, a jury determined Plaintiff was an "employee" of Defendants under the FLSA and the NYLL and "willfully" violated the FLSA. (*See* 9/16/2023 Minute Entry; Verdict Sheet, Dkt. 102.) The jury further determined that Defendants were liable to Plaintiff for $36,400 in unpaid overtime wages, $4,200 in backpay, $1

in nominal damages, and $60,000 in punitive damages.  (Verdict Sheet, Dkt. 102.)  Now before

the Court is Plaintiff's motion for statutory damages, liquidated damages, pre-judgment and post-

judgment interest, a statutory penalty in the event of non-payment, attorneys' fees of $203,432.25

and costs of $8,239.46.  (*See* Notice of Mot., Dkt. 111; Pl.'s Mem. of Law in Supp. of Mot. ("Pl.'s

Mem."), Dkt. 112; Pl.'s Reply, Dkt. 115.)  For the reasons explained below, the Court partially

grants Plaintiff's motion, and awards attorneys' fees of $150,080.30 and costs of $8,239.46.

## BACKGROUND

The facts of this case are discussed in detail in the Court's prior orders and need not be

recounted fully here.  *See Jones I*, 434 F. Supp. 3d at 17–20; *Jones v. Pawar Bros. Corp.* (*Jones*

*II*), No. 17-CV-3018 (PKC) (SJB), 2022 WL 4226092, at *1–2 (E.D.N.Y. Sept. 13, 2022).  In

short, Plaintiff worked for Defendant Harjinder Singh as a tow truck driver from approximately

September 2010 to February 2017.[1]  *Jones I*, 434 F. Supp. 3d at 17–18; Compl., Dkt. 1, ¶ 2.  Singh

failed to pay Plaintiff at an overtime rate for hours worked in excess of 40 per week.  After Plaintiff

threatened to file suit, Singh fired Plaintiff.  *Jones I*, F. Supp. 3d at 28 ("By Defendants' own

admission, Plaintiff stopped receiving calls from Singh—in effect, terminating Plaintiff—because

of the filing of this lawsuit.").

On May 18, 2017, Plaintiff filed a Complaint with this Court on behalf of himself and other

similarly situated individuals alleging Defendants (1) failed to pay Plaintiff overtime compensation

in violation of the FLSA and the NYLL, (2) failed to provide Plaintiff with wage statements in

violation of the NYLL, (3) terminated Plaintiff in retaliation for this lawsuit in violation of the

---

[1] USAC is owned by Defendant Harjinder Singh wholly, and operates on the same premises
as Pawar, which is jointly owned by Harjinder Singh and his non-party brother.  *Jones I*, 434 F.
Supp. 3d at 18.  The Court's 2020 Memorandum & Order determined that USAC and Pawar were
joint entities for the purposes of FLSA/NYLL and therefore the complexities of this business
structure and employment arrangement have no bearing on the present motion.  *Id.* at 22–23.

anti-retaliatory provisions of the FLSA and the NYLL, and (4) Defendants' violations of the NYLL and FLSA were willful.  (Compl., Dkt. 1, ¶¶ 1–8.)

In ruling on Plaintiff's motion for summary judgment, on January 22, 2020, the Court held that the issue of whether Plaintiff was an "employee" under the FLSA and the NYLL, and therefore entitled to damages, would proceed to trial, and that if Plaintiff was found to be an "employee" at trial, he would be summarily entitled to statutory damages for his wage statement claim and receive relief for both uncompensated overtime hours and his termination, which the Court found was "retaliatory."  *Jones I*, 434 F. Supp. 3d at 24–28.  The Court further held that if Plaintiff was an "employee," the question of whether Defendants acted willfully would also have to be decided by the jury.  *Id.* at 28–29.

A jury trial commenced on September 14, 2022.[2]  (9/14/2022 Minute Entry.)  The jury reached its verdict on September 16, 2022, finding that under the FLSA and the NYLL, Defendants "employed" Plaintiff and willfully failed to comply with the statutes.  (*See* Verdict Sheet, Dkt. 102.)  With the affirmative answer from the jury that Plaintiff was an employee of Defendants and in light of the Court's conclusion that "*in the event* a jury finds that Plaintiff was an employee of Defendants, his termination violated the anti-retaliation clauses under the FLSA and the NYLL[,]" Plaintiff became entitled to punitive damages for Defendants' retaliation.  *See Jones I*, 434 F. Supp. 3d at 28.  The jury awarded Plaintiff $36,400 in unpaid overtime wages, $4,200 in backpay damages, and $60,000 in punitive damages.  (Verdict Sheet, Dkt. 102.)

Plaintiff now moves for an award of statutory damages, liquidated damages, pre-judgment and post-judgment interest, a statutory penalty in the event of non-payment, attorneys' fees, and expenses.  (*See* Notice of Mot., Dkt. 111; Pl.'s Mem., Dkt. 112.)  Along with his motion, Plaintiff

---

[2] The Covid-19 pandemic delayed trial significantly.  (*See, e.g.*, 7/29/2020 Docket Order.)

submitted an exhibit containing his attorneys' timesheets and proof of costs.  (*See* Weiss Decl., Dkts. 113-1; 113-2.)   Specifically, Plaintiff requests that the Court enter Judgment against Defendants, awarding Plaintiff the following: (1) $5,000 in NYLL wage reporting statutory damages, (2) $36,400 in overtime wages,  (3) $60,000 in punitive damages, (4) $4,200 in backpay liquidated damages, (5) $1 in nominal damages, (6) $40,600 in liquidated damages,[3] (7) $28,658.28 in pre-judgment interest for overtime wages, (8) $2,186.72 in pre-judgment interest for backpay damages, (9) post-judgment interest in an amount to be determined by the Clerk of the Court, (10) $203,432.25 in attorneys' fees,[4] and (11) $8,239.46 in litigation costs. (Pl.'s Mem., Dkt. 112, at 19; Pl.'s Reply, Dkt. 115, at 9.)

Defendants' opposition to Plaintiff's motion objects to much of Plaintiff's request for attorneys' fees on many grounds, albeit with little to no reference to specific hours worked or billing rates, and requests that the Court reduce the fees to account for the "over litigation" of this case.  (*See* Defs.' Mem. Of Law in Opp'n ("Defs.' Mem."), Dkt. 114, at 1.)   Defendants also request, in a single, wholly conclusory sentence, that the Court vacate the jury's award of punitive damages.  (*Id.* at 7 (arguing, in full, that the jury's punitive damages award "is excessive, unwarranted and not supported by the evidence").)  Defendants do not object to Plaintiff's request for statutory damages, liquidated damages, pre-judgment and post-judgment interest, or penalty in event of non-payment.  (*Id.*)  Plaintiff filed a reply brief responding to Defendants' opposition arguments as well as requesting additional attorneys' fees for time spent on the reply. (Pl.'s Reply,

---

[3] Liquidated damages are comprised of $36,400 in Plaintiff's unpaid overtime wages and $4,200 in backpay damages.

[4] Plaintiff initially sought $197,449.75 in attorneys' fees (*see* Pl.'s Mem., Dkt. 112, at 19), but increased his request by $5,982.50 for "reimbursement for the 21.9 hours Plaintiff's counsel spent drafting [his] reply" (*see* Pl.'s Reply, Dkt. 115, at 9).  Thus, Plaintiff seeks a total of $203,432.25 in attorneys' fees ($197,449.75 + $5,982.50 = $203,432.25).

Dkt. 115, at 9.)  In total, Plaintiff seeks fees of $203,432.25 for 764.4 hours of work by their attorneys and $8,239.46 for costs associated with filing the Complaint, serving process, mediation services, trial and deposition transcripts, travel, translating notices, legal research, printing, and postage.  (Pl.'s Mem., Dkt. 112; Pl.'s Reply, Dkt. 115; Weiss Decl., Dkt. 113, ¶ 62.)

## DISCUSSION

### I.    Statutory Damages

Plaintiff requests the Court enter Judgment against Defendants, jointly and severally, awarding Plaintiff $5,000 in NYLL wage reporting statutory damages (*see* Pl.'s Mem., Dkt. 112, at 19).  As noted, Defendants do not object to this request.  (*See* Defs.' Mem., Dkt. 114, at 1.)[5]

"New York's Wage Theft Prevention Act, amended on February 27, 2015, entitles employees to statutory damages for violation of the wage statement requirement of $250 per workday that the violation occurred, not to exceed $5,000." *Jones I*, 434 F. Supp. 3d at 27 (citing N.Y. Lab. Law §§ 195, 198(1-d)).  This Court held in *Jones I* that if the jury found Plaintiff to be Defendants' employee, which they subsequently did at trial (*see* 9/16/2023 Minute Entry; Verdict Sheet, Dkt. 102), then "Plaintiff is entitled to statutory damages in the amount of $5,000." *Jones I,* 434 F. Supp. 3d. at 27.  Based on the Court's ruling in *Jones I* and the jury's finding that Plaintiff was Defendants' employee, the Court grants Plaintiff's request for an award of $5,000 in statutory damages under the NYLL.

---

[5] Although Defendants do not object to any of the jury's damages awards in this case, except for the amount of punitive damages (Dkt. 114, at 7), the Court independently assesses the propriety of each of these awards.  *See Paguay v. Cantini*, No. 11-CV-6266 (VEC), 2014 WL 12775308, at *1–2 (S.D.N.Y. Aug. 1, 2014) (assessing plaintiff's submission of damages under the FLSA and NYLL after a jury trial despite defendants not objecting to every submission).

## II.      Liquidated Damages

Plaintiff also requests the Court award him $36,400 in unpaid overtime wages and $4,200 in backpay as compensation for Defendants' retaliatory termination of his employment, as awarded by the jury.  (*See* Verdict Sheet, Dkt. 102; Pl.'s Mem., Dkt. 112, at 19.)  Defendants do not object to Plaintiff's request for liquidated damages.  (Defs.' Mem., Dkt. 114, at 1.)

Under both the FLSA and the NYLL, employees may be entitled to liquidated damages equal to the amount owed for unpaid wages.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a). Plaintiffs may not receive double recovery of wages under both the FLSA and the NYLL. *Hernandez v. Jrpac Inc.*, No. 14-CV-4176 (PAE), 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) (quoting *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980)).  Instead, a court has discretion to award damages under whichever statute offers the greatest amount of relief.  *Charvac v. M & T Project Managers of N.Y., Inc.*, No. 12-CV-05637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) ("[T]he law providing the greatest recovery will govern."), *report and recommendation adopted as modified*, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015).  Both the NYLL and the FLSA give "courts the 'discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective good faith with objectively reasonable grounds for believing that its acts or omissions did not violate the [statute].'"  *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) (quoting *Barfield v. N.Y. City Health & Hospitals Corp.*, 537 F.3d 132, 142 (2d Cir. 2008) (internal quotations omitted)), *report and recommendation adopted*, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016).

In *Jones I*, the Court dismissed Defendants' good faith defense under the FLSA and NYLL. *See Jones I*, 434 F. Supp. 3d at 20 n.4 ("[T]he Court finds that Defendants have failed to put forward any evidence, let alone 'plain and substantial evidence,' that they made any effort to

'ascertain what the FLSA requires and to comply with it.' . . .   Therefore, Defendants' good faith

defense under the FLSA and the NYLL is dismissed." (citations omitted)).   The jury thereafter

credited Plaintiff's testimony regarding his weekly salary and hours worked and awarded him the

difference between what the NYLL required and what he was paid.[6]   (Verdict Sheet, Dkt. 102.)

Because the NYLL offered the greatest avenue for relief, Plaintiff's damages were calculated

under the NYLL.   (*See* Verdict Sheet, Dkt. 102 (extending the recovery period to six years prior

to the commencement of the case, which is permitted under the NYLL, not the FLSA).)

    In accordance with NYLL § 198, the jury calculated damages beginning with wages owed

six years prior to filing the action, from 2011 forward, and awarded Plaintiff liquidated damages

"equal to one hundred percent of the total of such underpayments found to be due."   *See* N.Y. Lab.

Law §§ 198(1-a), (3) ("All employees shall have the right to recover full wages, benefits and wage

supplements and liquidated damages accrued during the six years previous to the commencing of

such action[.]").   The Court thus finds the jury's award of liquidated damages under the NYLL

appropriate, and grants Plaintiff's request for $36,400 in unpaid overtime wages.

    The jury also awarded Plaintiff $4,200 in backpay as compensation for Defendants'

retaliatory termination of his employment.   (Verdict Sheet, Dkt. 102.)   The NYLL permits

liquidated damages in an amount up to $20,000 for successful retaliation claims.   N.Y. Lab. Law

§ 215(2)(a); *see also Brito v. Marina's Bakery Corp.*, No. 19-CV-00828 (KAM) (MMH), 2022

WL 875099, at *23 (E.D.N.Y. Mar. 24, 2022) (awarding the maximum $20,000 under the NYLL).

---

[6] Plaintiff was paid $10/hour for every hour he worked for Defendants, but was not paid the appropriate premium hourly wage of 150% of his regular pay for hours worked each week in excess of 40.   The jury determined that Plaintiff worked 1,040 hours of overtime each year from 2011–2017.   Thus, the jury awarded Plaintiff $5,200 for each year Defendants failed to pay him appropriate overtime wages, or $5 extra per overtime hour, for an appropriate wage of $15/hour total for overtime hours.   (*See* Verdict Sheet, Dkt. 102.)

The Court thus finds the jury's award of backpay under the NYLL for Plaintiff's retaliatory termination appropriate, and grants Plaintiff's request for $4,200.

## III.     Pre- and Post-Judgment Interest

Plaintiff requests an award of pre-judgment interest pursuant to the NYLL based on his awards of $36,400 in unpaid overtime wages and $4,200 in backpay for his retaliatory termination, as well as post-judgment interest in an amount to be determined by the Clerk of Court pursuant to 28 U.S.C. § 1961(a).  (Pl.'s Mem., Dkt. 112, at 3–6.)  Defendants do not object to Plaintiff's request for pre- or post-judgment interest.  (Defs.' Mem., Dkt. 114, at 1.)

### A.     Pre-Judgment Interest

The NYLL provides for an award of pre-judgment interest in addition to liquidated damages, calculated at 9% per year.  *See* N.Y. Lab. Law § 198(1-a) (where an employee prevails on a wage claim, "the court shall allow such employee to recover the full amount of . . . prejudgment interest as required under the civil practice law and rules[.]"); *see also* N.Y. C.P.L.R. ("CPLR") § 5004(a) (McKinney) ("Interest shall be at the rate of nine per centum per annum[.]"). In compliance with CPLR § 5001(b), Plaintiff calculates the pre-judgment interest for the unpaid overtime wages to start accruing from April 3, 2014–the midpoint of Plaintiff's employment.  (Pl.'s Mem., Dkt. 112, at 6); *see also Brito*, 2022 WL 875099, at *21 (calculating pre-judgment interest for NYLL damages from "the midpoint" of the accrual of damages, or the midpoint between Plaintiff's start of work and termination).  Plaintiff additionally requests pre-judgment interest on the $4,200 backpay reward, calculated based on the midpoint between the time of his termination and the time he found new employment: March 19, 2017.  (Pl.'s Mem., Dkt. 112, at 6); *see also Brito*, 2022 WL 875099, at *23 (granting plaintiff's request for pre-judgment interest for backpay damages under the NYLL).

Accordingly, the Court adopts Plaintiff's interest calculation parameters as follows:

| Pre-judgment Interest Calculation | Principal Wages | Backpay |
|---|---|---|
| Midpoint Date | 4/3/2014 | 3/19/2017 |
| Award | $36,400 | $4,200 |
| Interest Rate | 9% annually | 9% annually |

In sum, the Court grants Plaintiff's request for pre-judgment interest on his actual unpaid overtime wage and retaliatory termination backpay awards, to be calculated by the Clerk of Court at the time judgment is entered from the midpoint dates listed above through the time judgment is entered.

### B.    Post-Judgment Interest

Plaintiff is also entitled to post-judgment interest under 28 U.S.C. § 1961(a).  Post-judgment interest is calculated "from the date of the entry of the judgment at [the federal] rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of judgment." *Id.* (typographical error and explanatory footnote omitted).  Such awards are "mandatory" under § 1961. *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004).  Accordingly, the Court orders that Plaintiff be awarded post-judgment interest on all sums awarded, to accrue from the entry of judgment until the date of payment. *See Teofilo v. Real Thai Cuisine Inc.*, No. 18-CV-7238 (KPF), 2021 WL 22716, at *6 (S.D.N.Y. Jan. 4, 2021) (awarding post-judgment interest pursuant to 28 U.S.C. § 1961 for violations of the NYLL).

## IV.    Statutory Penalty in Event of Non-Payment

Plaintiff seeks confirmation that the NYLL's increase-judgment provision will be applied in the event that Defendants fail to pay the amounts specified in the judgment in this case.

Defendants do not object to the application of this penalty provision.  (Defs.' Mem., Dkt. 114, at 1.)

> According to the NYLL:
>
> Any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

N.Y. Lab. Law § 198(4); *see also Castillo v. RV Transp., Inc.*, No. 15-CV-0527 (LGS) (JCF), 2015 WL 13746672, at *10 (S.D.N.Y. Dec. 21, 2015) (discussing the same), *report and recommendation adopted as modified,* 2016 WL 1417848 (S.D.N.Y. Apr. 11, 2016).  Because all of Plaintiff's damages are attributable to the NYLL, the increased-judgment provision will apply if Defendants fail to pay damages as directed by this Memorandum & Order.

## V.    Punitive Damages

The jury awarded Plaintiff $60,000 in punitive damages.  (Verdict Sheet, Dkt. 102.) Defendants requested in their opposition that the Court "vacate the award of punitive damages, as it is excessive, unwarranted and not supported by the evidence presented."  (Defs.' Mem., Dkt. 114, at 7.)  As noted, Defendants do not cite any authority or proffer any  arguments to substantiate their claim, nor did Defendants make post-trial motions pursuant to Federal Rules of Civil Procedure 50 or 59 challenging the amount of punitive damages awarded.

The jury was instructed that they could, but were not required to, award punitive damages to Plaintiff if they found Defendants' retaliation was done "with malice or with reckless indifference" to acts that caused the complained-of injury in order to "punish Defendants for wanton and reckless or malicious acts and thereby to discourage Defendants and other people or companies from acting in a similar way in the future."  (Jury Instrs., Dkt. 101, at 21.)  Defendants

proffer no reason, and the Court finds none, as to why a reasonable jury member could not have credited Plaintiff's testimony and found that Defendants acted with reckless indifference in the retaliatorily termination of Plaintiff. Furthermore, Defendants did not pursue the proper legal avenue to challenge the jury's award of punitive damages.

Based on the evidence presented at trial, the Court finds no reason to disturb the jury's award. Thus, the Court rejects Defendants' meritless challenge to punitive damages and awards Plaintiff $60,000 in punitive damages as determined by the jury. *See also Artica v. J.B. Custom Masonry & Concrete, Inc.*, Nos. 09-CV-3796 (RER), 11-CV-842 (RER), 2012 WL 11945654, at *9–10 (E.D.N.Y. July 16, 2012) (finding "no reason to disturb the jury's award of [$350,000 in] punitive damages" under the FLSA and NYLL when Defendants proffered "no substantive arguments to substantiate their claim.").[7]

## VI. Attorneys' Fees

As the prevailing party in this action, Plaintiff is entitled to an award of "reasonable" attorney's fees under both the NYLL and the FLSA. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a); *Charvac*, 2015 WL 5475531, at *8. "[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). "District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 94 (E.D.N.Y. 2012) (internal quotation

---

[7] Notably, *Artica* addresses Rule 50 and 59 motions—which Defendants chose or neglected to file.

marks and citations omitted).  The party seeking an award of fees has the obligation to submit contemporaneous time records that specify, for each attorney, the nature of the work done, the hours expended, and the dates.  *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir. 1983).

Plaintiff has submitted timesheets detailing the time the attorneys of Borrelli & Associates P.L.L.C. (the "Firm") spent on this matter and their hourly rates.  (*See* Weiss Decl., Dkts. 113-1, 113-2.)  Below is a breakdown of the hourly rates and numbers of hours spent by person, based on Plaintiff's declaration and the accompanying exhibits.[8]

| Person | Title | Hourly Rate | Hours | Fees |
|---|---|---|---|---|
| Michael J. Borrelli | Partner | $400 | 30.2 | $12,080 |
| Alexander T. Coleman | Partner | $350 | 46.8 | $16,380 |
| Andrew C. Weiss | Senior Associate | $275 | 200.4 | $53,760 |
| Michael R. Minkoff | Senior Associate | $295 | 261.7 | $75,594 |
| Ryan T. Holt | Senior Associate | $250 | 118.1 | $28,025 |
| Michael B. Engle | Associate | $200 | 7 | $1,400 |
| Thomas R. Crouch | Associate | $200 | 8.2 | $1,640 |
| Yaqarah Letellier | Associate | $175 | 19.2 | $3,360 |
| Haleigh Amant | Law Clerk | $125 | 18 | $2,250 |
| Luiggi Tapia | Paralegal | $90 | 14.2 | $1,278 |
| Pablo Martinez | Paralegal | $90 | 18.7 | $1,683 |
| **Total** | | | 742.50 | **$197,449.75** |

---

[8] The Court notes that the Firm bills attorney travel time at half of the respective hourly rate.  Those rates have been incorporated into this chart for simplicity.

Plaintiff also requests an additional $5,982.50 in reimbursement for 21.9 hours spent preparing Plaintiff's reply, broken down by hourly rate and numbers spent by person below:

| Person | Title | Hourly Rate | Hours | Fees |
|---|---|---|---|---|
| Michael J. Borrelli | Partner | $400 | 0.3 | $120 |
| Alexander T. Coleman | Partner | $350 | 2.7 | $945 |
| Andrew C. Weiss | Senior Associate | $275 | 16.9 | $4,648 |
| Pablo E. Martinez | Paralegal | $90 | 2 | $180.00 |
| **Total** | | | **21.9** | **$5,892.50** |

(*See* Supplemental Weiss Decl., Dkts. 116, 116-1.)

In total, Plaintiff requests $203,342.25 in attorneys' fees for 764.4 hours spent litigating this action. Defendants request the Court reduce Plaintiff's claim to attorneys' fees and costs to a reasonable amount under the circumstances of the case. (Defs.' Reply, Dkt. 114, at 7.) Defendants take issue with the number of attorneys staffed, the number of hours worked, and the attorneys' hourly rates. (*Id.* at 3–5.) For the reasons explained below, the Court finds the number of hours expended by Plaintiffs' counsel in this case to be excessive, and their hourly rates surpass the customary rates awarded in such situations, necessitating a slight reduction in both.

### A. Reasonable Hourly Rate

"A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" *Santillan v. Henao*, 822 F. Supp. 2d 284, 299 (E.D.N.Y. 2011) (alteration in original) (quoting *Arbor Hill*, 522 F.3d at 190). In general, a reasonable hourly rate "should be based on 'rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.'" *Santillan*, 822 F. Supp. 2d at 299 (quoting *Cruz v. Loc. Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994)). "The 'community' is generally considered the district where the district court sits." *Santillan*, 822 F. Supp. 2d at 299 (citing *Arbor Hill*, 522 F.3d

at 190); *see also Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) ("[C]ourts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." (internal quotation marks and citations omitted)).

In a FLSA case, "the reasonable rate should reflect the rates awarded in FLSA cases in this district, not cases involving other fee-shifting statutes." *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *10 (E.D.N.Y. Mar. 9, 2021) (quoting *Martinez v. New 168 Supermarket LLC*, No. 19-CV-4526 (CBA) (SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020)). "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Id.* (collecting cases); *accord Lopez v. 1923 Sneaker, Inc.*, No. 18-CV-3828 (WFK) (RER), 2021 WL 1845057, at *9 (E.D.N.Y. Mar. 5, 2021), *report and recommendation adopted*, 2021 WL 1259623 (E.D.N.Y. Apr. 6, 2021); *Rodriguez v. Yayo Rest. Corp.*, No. 18-CV-4310 (FB) (PK), 2019 WL 4482032, at *8 (E.D.N.Y. Aug. 23, 2019), *report and recommendation adopted*, 2019 WL 4468054 (E.D.N.Y. Sept. 18, 2019).

Defendants argue Plaintiff "unreasonably inflate[d]" the hourly rates for his attorneys, but do not specify which attorneys' rates are particularly high. (Defs.' Mem., Dkt. 114, at 2.) Thus, the Court will address each attorney's rate by position.

### 1.   Partners Michael J. Borrelli and Alexander T. Coleman

Borrelli is the founding and managing partner of the Firm. (Weiss Decl., Dkt. 113, ¶ 28.) He has been practicing law for over 21 years with a primary focus on labor and employment law cases. (*Id.*) Although Borrelli's current hourly rate charged and paid for by clients is $500, he has requested a rate of $400/hour for this matter. (*Id.* ¶¶ 22, 36).

Coleman is a partner at the Firm. (*Id.* ¶ 37.) He has been practicing law since 2008 and joined the Firm in 2010 after completing a one-year clerkship with a state judge in Virginia. (*Id.*

¶¶ 37–38.)  He primarily handles wage and hour and employment discrimination cases.  (*Id.* ¶ 39.) Coleman's current hourly rate charged and paid for by clients is $400, and he has requested a rate of $350/hour for this matter.  (*Id.* ¶¶ 22, 41).

These requested rates have been awarded to lawyers of the Firm in this District and the Southern District of New York.  *Perez v. Merrick Deli & Grocery, Inc.*, No. 13-CV-5166, 2019 WL 1492247, at *1 (E.D.N.Y. Apr. 4, 2019) (recognizing that that "[t]his Court and the neighboring Southern District of New York have routinely approved these billing rates for Borrelli & Associates"); *see, e.g.*, *Villalta v. JS Barkats, P.L.L.C.*, No. 16-CV-2772 (RAR) (WL), 2021 WL 2458699, at *21 (S.D.N.Y. Apr. 16, 2021) (approving hourly rates of $400/hour for Borrelli and $350/hour for Coleman), *report and recommendation adopted*, 2021 WL 2458023 (S.D.N.Y. June 16, 2021); *Tejada v. La Selecta Bakery, Inc.*, No. 17-CV-5882, 2020 WL 7249393, at *5 (E.D.N.Y. Sept. 23, 2020) (noting rates between $200 and $400 for the Borrelli firm's attorneys "fall within the range typically approved by this Court . . . [and] find[ing] the requested hourly rates to be reasonable"), *report and recommendation adopted*, 2020 WL 6937882 (E.D.N.Y. Nov. 25, 2020); *Salto v. Alberto's Constr., LLC*, No. 17-CV-3583 (PED), 2020 WL 4383674, at *7 (S.D.N.Y. July 31, 2020) (noting, on a contested fee motion, that the requested hourly rates of $350 for partner, Alexander T. Coleman, and $295 per hour for the senior counsel litigating the case "are reasonable").

After reviewing the qualifications of both Borrelli and Coleman and the case law awarding the same rates, the Court finds their requested hourly rates reasonable.

2.  <u>Senior Associates Andrew C. Weiss, Ryan T. Holt, and Michael R. Minkoff</u>

Senior Associates Weiss, Holt, and Minkoff collectively account for the lion's share of the attorneys' fees claimed by Plaintiff's counsel:  597.1 hours of the 764.4 hours.

Weiss graduated law school in 2017, the same year this action commenced, and did not join the Firm until 2021. (Weiss Decl., Dkt. 113, ¶¶ 42–43.) Prior to joining the Firm, Weiss primarily practiced civil rights law, specializing in trial work for the New York City Law Department's Special State Law Enforcement Defense Unit and subsequently working at a boutique civil rights law firm. (*Id.* ¶ 43.) His work on this matter consisted primarily of all tasks associated with preparing for trial, first chairing the three-day-trial in September 2022, and drafting post-trial motions. (*Id.* ¶ 46.) Weiss has requested an hourly rate of $275. (*Id.* ¶ 47.)

Holt had not yet graduated law school at the time this action commenced in 2017. (*Id.* ¶ 48.) Prior to joining the Firm in April of 2022, Holt worked as a public defender at the Nassau County Legal Aid Society, representing clients charged with crimes ranging from misdemeanors to violent felonies. (*Id.*) Holt began assisting with the present matter in July of 2022, and served as second chair at trial in September 2022. (*Id.* ¶ 49.) He requests an hourly rate of $250. (*Id.* ¶ 50.)

At the time this action commenced, Minkoff had been practicing for four years. (*Id.* ¶ 51.) Prior to joining the Firm in February of 2015, Minkoff was an associate at Feldman, Fox & Morgado, P.A., specializing in plaintiff-side wage and hour and employment discrimination matters. (*Id.*) Minkoff's work in this case consisted of handling all matters relating to pre-litigation investigation through the filing of the parties' competing summary judgment motions, and the mediation that took place thereafter. (*Id.* ¶ 52.) He requests an hourly rate of $295. (*Id.* ¶ 53.)

"Hourly rates for senior associates in this District range from $200-$325[,]" *Lopez*, 2021 WL 1845057, at *10 (citations omitted), with the higher rates reserved for senior associates that have significant involvement in the case. *See, e.g.*, *Armata v. Unique Cleaning Servs., LLC*, No.

16

13-CV-3625 (DLI) (RER), 2015 WL 12645527, at *10 (E.D.N.Y. Aug. 27, 2015) (awarding $250/hour to a senior associate with four-years' experience in a FLSA and NYLL case where only two associates were tasked on the matter in total). In contrast, "[t]he typical rates in this district for junior associates are $100 to $200 per hour." *Sevilla v. House of Salads One LLC*, No. 20-CV-6072 (PKC) (CLP), 2022 WL 954740, at *12 (E.D.N.Y. Mar. 30, 2022), at *12 (citing *Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 6311868, at *2 (E.D.N.Y. Oct. 28, 2016)). The demarcation between junior and senior associates in this district is typically four or more years. *See Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM) (RLM), 2011 WL 6010211, at *9 (E.D.N.Y. Nov. 29, 2011) (explaining the typical hourly rates for associates litigating FLSA/NYLL claims in the Eastern District of New York range from "$200 to $250 for senior associates with four or more years of experience" and "$100 to $150 an hour for junior associates with one to three years of experience" (citations omitted)).

The rates requested for Weiss and Holt are excessive. Although Weiss had been practicing for about four years at the time he began working on this matter, neither he nor Holt had much, if any, experience litigating FLSA or NYLL wage claims prior to joining the Firm and subsequently working on this action. Although both had trial experience, courts in this district have reduced the hourly rates of senior associates when they have limited experience in the subject matter of the litigation. *See, e.g.*, *Armata*, 2015 WL 12645527, at *10 (awarding an hourly rate of $175 to a junior associate who had four years of experience); *Sevilla*, 2022 WL 954740, at *12 (reducing the hourly rate of a senior associate from $350 to $175 after finding she had less than two years of experience litigating FLSA wage cases and her experience was more akin to that of a junior associate).

17

Accordingly, the Court reduces Weiss's hourly rate to $225 and Holt's hourly rate to $200. The Court finds Minkoff's rate of $295/hour to be appropriate considering his additional years of experience litigating wage and hour claims.

### 3.   Non-Trial Associates Michael B. Engler, Thomas R. Crouch, and Yaqarah Letellier

Associate Engler graduated law school in 2015 and, prior to joining the Firm in 2016, worked as a judicial intern for the Honorable Joan M. Azrack in the United States District Court for the Eastern District of New York, and subsequently as law clerk at a firm specializing in insurance defense, employment, products liability, and civil rights law. (Weiss Decl., Dkt. 113, ¶ 54.) Engler assisted with this matter from February 22, 2017 through July 20, 2017, and was primarily tasked with communicating with Plaintiff on behalf of the Firm, assisting in drafting the Complaint, and assisting with pre-litigation investigation of Plaintiff's claims. (*Id*.) He requests an hourly rate of $200. (*Id*.)

Crouch graduated law school in 2013 and, prior to joining the Firm, clerked for the Honorable Perry M. Buckner, III at the South Carolina Fourteenth Judicial Circuit and worked as an associate at a boutique Workers' Compensation defense law firm. (*Id.* ¶ 55.) Crouch assisted with this matter from February 16, 2018 through May 29, 2018, and was primarily tasked with assisting with collecting information for and drafting discovery responses. (*Id.*) He requests an hourly rate of $200. (*Id.*)

Letellier graduated law school in 2021 and, prior to joining the Firm, clerked at an insurance and personal injury law firm. (*Id.* ¶ 56.) Letellier assisted with this matter from June 9, 2022 through September 13, 2022, and was primarily tasked with indexing depositions to assist with trial preparation. (*Id.*) She requests an hourly rate of $175. (*Id*.)

The Court finds the hourly rates requested for Engler, Crouch, and Letellier excessive. Although Crouch assisted with drafting discovery responses and Engler assisted in drafting the Complaint, Minkoff subsequently billed hours reviewing and revising both drafts. (Weiss Decl., Dkt. 113-1.)  Letellier was primarily tasked with an administrative task and has no relevant FLSA wage litigation experience, but still requested a rate on the higher end of the hourly rates suggested in this District for junior associates. *See Sevilla*, 2022 WL 954740, at *12 ("[T]ypical rates in this district for junior associates are $100 to $200 per hour." (citation omitted)).  Due to each attorney's minimal involvement in the action, their fees should be reduced. *See Lopez*, 2021 WL 1845057, at *11 (reducing Crouch's fee from $200/hour to $100/hour).

Accordingly, the Court reduces Engler and Crouch's rates to $125/hour, and Letellier's rate to $100/hour in light of her inexperience litigating FLSA and NYLL claims.

### 4.    Law Clerk Haleigh Amant

Amant graduated law school in 2017 and worked at the Firm as a law clerk pending her admission to the Bar.  (Weiss Decl., Dkt. 113, ¶ 57.)  Amant briefly worked on this matter from August 15, 2017 through November 7, 2017, and was primarily tasked with assisting in drafting Plaintiff's motion for default judgment and its accompanying documents.  (*Id.*)  She requests an hourly rate of $125.  The Court finds Amant's requested hourly rate reasonable. *See Caltenco v. G.H. Food Inc.*, No. 16-CV-1705 (VMS), 2021 WL 4481205, at *6 (E.D.N.Y. Sept. 30, 2021) (finding Amant's requested hourly rate of $125 reasonable), *reconsideration denied*, 2022 WL 4539673 (E.D.N.Y. Sept. 28, 2022).

### 5.    Paralegals Luiggi Tapia and Pablo Martinez

Tapia and Martinez "are current or former [Firm] staff members" who assisted in paralegal and clerical duties associated with this action.  (Weiss Decl., Dkt. 113, ¶ 58.)  Both had paralegal certifications during the time periods they worked on this matter, and request an hourly rate of

$90.  (*Id.* ¶ 59.)  Given that "'[t]he average compensation rate for non-attorney support staff is $90 per hour in this district,'" *Lopez*, 2021 WL 1845057, at *11 (reducing Martinez's rate to $90) (quoting *Martinez v. City of New York*, 330 F.R.D. 60, 71 (E.D.N.Y. 2019)), the Court finds the paralegals' rate of $90/hour reasonable.

*   *   *

Accordingly, the Court adjusts Plaintiff's requested hourly rates and fees for each member of the Firm as follows (changed figures bolded):[9]

| Person | Title | Hourly Rate | Hours | Fees |
|--------|-------|-------------|-------|------|
| Michael J. Borrelli | Partner | $400 | 30.5 | $12,080 |
| Alexander T. Coleman | Partner | $350 | 49.5 | $16,380 |
| Andrew C. Weiss | Senior Associate | **$225** | 217.3 | **$47,790** |
| Michael R. Minkoff | Senior Associate | $295 | 261.7 | $75,593.75 |
| Ryan T. Holt | Senior Associate | **$200** | 118.1 | **$22,420** |
| Michael B. Engle | Associate | **$125** | 7 | **$875** |
| Thomas R. Crouch | Associate | **$125** | 8.2 | **$1,025** |
| Yaqarah Letellier | Associate | $100 | 19.2 | $1,920 |
| Haleigh Amant | Law Clerk | $125 | 18 | $1,800 |
| Luiggi Tapia | Paralegal | $90 | 14.2 | $1,278 |
| Pablo Martinez | Paralegal | $90 | 20.7 | $1,863 |
| **Total** | | | 764.40 | **$183,024.75** |

### B.   Reasonable Number of Hours

In reviewing a fee application, "the district court should exclude excessive, redundant or otherwise unnecessary hours[.]" *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–35, 440 (1983)).  The relevant inquiry "is not

---

[9] This chart reflects total fee amounts that were reached by factoring in an hourly rate of half the updated hourly rates for all travel billed.  Minkoff billed 10.9 hours of travel, Weiss billed 9.8 hours of travel, and Holt billed 12 hours of travel.

whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted). To inform this inquiry, the district court "may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985)). "[T]he district court is not obligated to undertake a line-by-line review" of a fee application, and "may, instead, 'exercise its discretion and use a percentage deduction as a practical means of trimming fat.'" *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 150 (2d Cir. 2014) (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006)).

"Where counsel seeks compensation for time spent completing redundant or administrative tasks, or work that should have been done by a less-skilled practitioner, 'uniform percentage cutbacks are warranted.'" *Lopez*, 2021 WL 1845057, at *11 (citing *Singh v. A&A Mkt. Plaza, Inc.*, No. 15-CV-7396 (AKT), 2019 WL 4861882, at *10 (E.D.N.Y. Sept. 30, 2019)). "For example, in this District, Courts have reduced requested attorney fees by 20%-50% when billing records contain vague descriptions of the work performed, redundant internal communication, duplication of work, and indication that partner-level rates were charged for tasks that should have been performed by junior level associates or paralegals." *Lopez*, 2021 WL 1845057, at *11 (citations omitted); *see also Pocius v. Sec. Auto Sales Inc.*, No. 16-CV-400 (JFB) (SIL), 2018 WL 3999649 at *5–6 (E.D.N.Y. July 6, 2018) (reducing attorneys' fees by 30% in FLSA action for a variety of concerns regarding time entries, including duplicate time); *Chavez v. MCS Claim Servs.*, 15-CV-3160 (JMA) (AKT), 2016 WL 1171586, at *5 (E.D.N.Y. March 23, 2016) (reducing total hours by 30% since "much of the work in this case could have been conducted by a less experienced

associate billing at a significantly lower rate"); *Video Aided Instruction, Inc. v. Y & S Express, Inc.*, No. 96-CV-0518, 1996 WL 711513 (CBA), at *6 (E.D.N.Y. Oct. 29, 1996) (reducing partner's hours by 50% where his level of involvement in the case was excessive "in light of [his] qualifications and experience").

Defendants request the Court reduce the number of hours billed by a reasonable amount, arguing Plaintiff's attorneys often billed in "blocks" that contain "vague internal entries" and unnecessarily overstaffed in relation to the complexity of the issues being litigated. (Defs.' Mem., Dkt. 114, at 3, 5.)  Defendant argues that all of Minkoff's hours should be stricken, as he is no longer employed by the Firm.  (*Id.* at 2.)  Lastly, Defendants contend that the total award of attorneys' fees here would be excessive as "Plaintiff was initially claiming just over $40,000 in damages" and intended this case to be a "more substantial collective action, but it never resulted in one." (*Id.* at 1.)  Plaintiff argues that Defendants' litigation tactics, such as submitting "baseless" summary judgment motions, extended the length and breadth of the motion practice and discovery, thereby causing Plaintiff's attorneys to spend additional time litigating this issue.  (Pl.'s Mem., Dkt. 112, at 15; Pl.'s Reply, Dkt. 115, at 6.)  Plaintiff has also preemptively reduced the amount of hours in the lodestar by 137 hours, deeming some hours duplicative or attributable to the turnover of attorneys who worked on this matter.  (Pl.'s Mem., Dkt. 112, at 15.)

The Court disagrees with Defendants' contention that Plaintiff's attorneys used block billing.[10]  (*See* Weiss Decl., Dkt. 113-1.)  However, the majority of billing entries are for review of ECF bounces and email correspondence.  (*See id.*)  Nearly every entry by Borrelli, the highest

---

[10] "Block billing refers to grouping multiple tasks into a single billing entry, so as to leave unclear how much time was devoted to each constituent task." *Benihana Inc. v. Benihana of Tokyo, LLC,* No. 14-CV-792, 2016 WL 3647638, at *5 (S.D.N.Y. June 29, 2016) (internal quotation and citation omitted).

billing-partner, describes e-mail or text correspondence and reviewing ECF bounces.  (*Id.*)  Many entries by the Firm's second highest-billing partner, Coleman, also describe administrative tasks related to e-mails and ECF bounce review.  (*Id.*)  "These are administerial tasks and should not be billed at partner rates."  *Lopez*, 2021 WL 1845057, at *12 (citing *Callari v. Blackman Plumbing Supply, Inc*., No. CV-11-3655 (ADS) (AKT), 2020 WL 2771008, at *12 (E.D.N.Y. May 4, 2020) (a partner "routinely review[ing] electronic orders and case management orders, [filing] documents on EFC [ ], arrang[ing] for the service of motions and discovery, and conduct[ing] other general tasks [ ] should have been conducted by a paralegal), *report and recommendation adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020)); *see also Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd.*, No. 12-CV-5456, 2013 WL 174226 (KMW) (AJP), at *9 (S.D.N.Y. Jan 17, 2013) (finding reduction warranted for entries billed at partner rates including "receiving and reviewing scheduling order," "receiving Certificate of Default," and "receiving and reviewing inquest order"), *report and recommendation adopted*, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013); *Andert v. Allied Interstate, LLC*, No. 12-CV-7010 (PAC), 2013 WL 3833077, at *3 (S.D.N.Y. July 17, 2013) (denying attorney's request for "partner-level rates" for "merely reviewing receipt of seven ECF confirmation emails, billing 0.1 hours for each ECF email received" and noting that these tasks required "trivial effort at best").  Much like the Firm's billing entries in *Lopez*, "it is unclear if [the] entries [by Borrelli and Coleman] accurately represent the time spent on the task," as nearly every entry for email, text, or ECF review is charged at .1 hours.  *Lopez*, 2021 WL 1845057, at *12 (reducing the Firm's fees by 30% "[g]iven the redundant billing for administerial tasks at partner rates"); *see also Fundora v. 87-10 51st Ave. Owners Corp.*, No. 13-CV-0738 (JO), 2015 WL 729736, at *1 (E.D.N.Y. Feb. 19, 2015) (reducing attorney fees by 10% when attorney

billed "separate 0.1 hour entries each time he reviews or replies to an email or leaves a voicemail, though these tasks typically take little more than a minute.").

The Court finds baseless Defendants' argument that Minkoff's fees should be stricken because he is no longer employed by Plaintiff's counsels' law firm. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 51 (E.D.N.Y. 2015) ("Requests for attorney's fees in this Circuit must be accompanied by contemporaneous time records that show for each attorney the date the work was done, the hours expended, and the nature of the work done.") (internal quotations omitted). Likewise, Defendants' contention that the total award of attorney's fees is excessive in relation to the amount of damages requested is improper, as the Second Circuit has rejected such an approach as being contradictory to the purpose of attorney's fees in wage and hour cases. *See Fisher v. SD Prot. Inc.*, 948 F.3d 593, 604 (2d Cir. 2020) ("The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." (quoting *Millea*, 658 F.3d at 169 (2d Cir. 2011))).

Although Plaintiff originally sought and obtained certification as a Collective Action, the scope of the action was never expanded because no other current or former employees joined the lawsuit. "[T]he fact that no additional plaintiffs opted in is beyond counsel's control and not a reason to reduce a fee award." *Lu Wan v. YWL USA Inc.*, No. 18-CV-10334 (CS), 2021 WL 1905036, at *9 (S.D.N.Y. May 12, 2021) (citing *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 14 (S.D.N.Y. 2015)); *but see Yue Ping Sun v. Buffet Star of Vestal Inc.*, No. 14-CV-912 (BKS) (DEP), 2017 WL 11296886, at *4 n.5 (N.D.N.Y. June 21, 2017) ("[A]lthough Plaintiffs secured certification as a collective action, some reduction is nonetheless warranted since they were ultimately unsuccessful in expanding the action to include additional employees.").

Regarding the complexity of the issues being litigated, "[t]he FLSA and NYLL are 'straightforward' and 'relatively simple.'" *Sevilla*, 2022 WL 954740, at *12 (quoting *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 208 (E.D.N.Y. 2007)).  Although this case has been active for over five years, much of the delay was due to the Covid-19 pandemic and not due to overly complicated litigation.  (*See* 07/29/2020 Minute Entry.)  Only two depositions were taken during discovery, the jury trial lasted three days, and just two witnesses were called; yet, over 700 hours were billed, mostly by the Firm's senior associates, in connection with trial preparation and the trial itself.  By comparison, in a FLSA and NYLL case litigated in this Circuit similarly commencing in 2017 and delayed as a result of the Covid-19 pandemic, after a four-day jury trial, plaintiffs' attorneys sought fees for only 251.05 (versus over 700) hours and were subsequently awarded fees for 231.82 hours.  *See Lianhua Weng v. Kung Fu Little Steamed Buns Ramen, Inc.*, No. 17-CV-273 (LAP), 2021 WL 2043399, at *1–2 (S.D.N.Y. May 21, 2021); *see also Jimenez v. KLB Foods, Inc.*, No. 12-CV-6796 (JPO), 2015 WL 3947273, at *3 (S.D.N.Y. June 29, 2015) (finding 155.6 hours worked by plaintiffs' counsel reasonable in "straightforward wage and hour action that involved a small number of depositions, relatively minor motion practice, and a brief trial.").

The Court is highly skeptical of the amount of hours being requested by Plaintiff's attorneys.  Given the Court's resolution of the summary judgment motion and supervision over the trial, the hours requested in similar actions, and the Firm's experience litigating wage and hour claims, the Court expects an efficient approach to this simple FLSA/NYLL action, even considering Defendants' refusal to concede facts and decision to move for summary judgment. (*See* Weiss Decl., Dkt. 113, ¶ 27 (claiming the "Firm has prosecuted thousands of cases in federal and state court, the overwhelming majority of which are on behalf of employees in either wage-

and-hour or discrimination-type cases.")); *see also Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388 (JFB) (SIL), 2021 WL 4894181, at *4, 7 (E.D.N.Y. Oct. 20, 2021) (finding, in a FLSA and NYLL action resulting in a two-day bench trial, the "[207.3] hours expended by Borrelli & Associates to be unreasonable because the hours requested are excessive given the nature of this particular case[,]" and applying a 40% across-the-board reduction to fees sought).  In examining one of Plaintiff's motions as a sample, Plaintiff requests $13,011.50 in attorney's fees for 47.7 hours of work in preparing Plaintiff's present fee application and motion for judgment.  (Pl.'s Mem., Dkt. 112, at 17–18.)  However, considering Plaintiff's attorneys' familiarity with wage and hour litigation, this is hardly the first FLSA/NYLL fee application or motion for judgment prepared by this firm in this Circuit.  *See, e.g.*, Mem. in Supp. of Mot. for Att'y Fees and Expenses, Dkt. 108, *Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388 (E.D.N.Y. Oct. 20, 2021) (citing 41 of the same cases cited in Plaintiff's present Memorandum).  Courts in this Circuit have found that "a reasonable number of hours to award for a motion for attorneys' fees is between 5 and 15 hours." *Feuer*, 2021 WL 4894181, at *5 (citations omitted).  Notwithstanding the requests for relief other than fees and expenses, which constitutes about one-third of Plaintiff's Memorandum, the Court still finds 47.7 hours to be an unreasonable amount of time spent in connection with the preparation of the instant motion, especially because of the well-established nature of the remedies awarded by the jury and otherwise sought by Plaintiff pursuant to statute, as well as the prior Memorandum & Order partially ruling on these remedies.  *See id.* (finding 26 hours spent by Borrelli & Associates in preparing a fee application to be "unreasonably high").

Thus, while the Court appreciates Plaintiff's preemptive reduction in hours included in the lodestar, due to the repeated 0.1 hour billings for email and ECF review, the straightforward nature of the issues and facts litigated, and the excessive hours billed in comparison to other cases of this

nature, the Court finds the number of hours requested by Plaintiff to be unreasonable, and warrants reducing Plaintiff's total amount of attorneys' fees by 18%, from $183,024.75 to $150,080.30.

## VII.    Costs

Both the FLSA and NYLL "allow prevailing employees to collect reasonable litigation costs." *Cortes v. Juquila Mexican Cuisine Corp.*, No. 17-CV-3942 (RER), 2021 WL 1193144, at *6 (E.D.N.Y. Mar. 29, 2021) (citing 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(4)).  "This includes '[t]he costs of depositions . . . where they appear to have been reasonably necessary to the litigation at the time they were taken.'"  *Id.* (quoting *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 490 F. Supp. 3d 593, 638 (E.D.N.Y. 2020)); *see also Cho*, 524 F. Supp. 2d at 212 (reimbursing expenditures for deposition services and transcripts as nontaxable costs in a FLSA action).  Additionally, reimbursable costs may include fees for process servers, court filings, postage, travel, photocopying, and legal research.  *See Trs. of the Pavers & Rd. Builders Dist. Council Welfare v. M.C. Landscape Grp., Inc.*, No. 12-CV-00834 (CBA) (VMS), 2016 WL 6998640, at *8 (E.D.N.Y. Aug. 25, 2016).  "Plaintiffs must submit receipts, invoices, or other evidence to support the costs requested."  *Cortes*, 2021 WL 1193144, at *6 (citations omitted); *see also Singh*, 2019 WL 4861882, at *11 (E.D.N.Y. Sept. 30, 2019) ("[I]t is incumbent upon the party seeking reimbursement of its costs to provide the court adequate substantiation in the form of receipts and other documents showing such costs were incurred." (citations omitted)).

Plaintiff has requested $8,239.46 in costs incurred as a result of this action.  (Weiss Decl., Dkt. 113, ¶ 62.)  Specifically, Plaintiff requests $400 for filing the Complaint; $711 for serving process and subpoenas; $300 for utilizing the mediation services of Barry J. Peek; $1,734.15 for obtaining trial transcripts; $2,747.78 for obtaining deposition transcripts; $352.12 for traveling to trial and travel related to discovery, $591.86 for translating notices that were sent out pursuant to the conditional certification order; $867.45 for Westlaw legal research; $4.70 for PACER chargers;

$456.46 for printing expenses for documents used at trial; and $71.94 for postage expenses throughout the litigation.  (*Id.*; Weiss Decl., Dkt. 113-3.)  Plaintiff has submitted an itemized billing invoice documenting the expenses and a declaration in support of its contents (Weiss Decl., Dkts. 113; 113-3), and supplemented the invoices with all receipts in counsels' possession in his reply (*see* Supplemental Weiss Decl., Dkt. 116-2).  Defendants request the Court reduce Plaintiff's costs to a reasonable amount because they claim the request has not been substantiated by receipts or bills.  (Defs.' Mem., Dkt. 114, at 7.)

The Court disagrees with Defendants' contention that Plaintiff did not substantiate his requests for costs with receipts or bills of any kind—Plaintiff has submitted both a detailed invoice with dates of each charge, as well as numerous receipts corresponding with the invoice.  (Weiss Decl., Dkt. 113-3; Supplemental Weiss Decl., Dkt. 116-2.)  The Court finds Plaintiff's submissions adequately document these costs and finds the requested amount to be reasonable.

## CONCLUSION

For the reasons set forth above, the Clerk of Court is respectfully directed to enter the following judgment against Defendants, itemized as follows: (1) statutory damages under the NYLL in the amount of $5,000; (2) unpaid overtime wages in the amount of $36,400; (3) unpaid backpay wages in the amount of $4,200; (4) liquidated damages in the amount of $40,600; (5) nominal damages in the amount of $1; (6) punitive damages in the amount of $60,000; (7) pre-judgment interest on the preceding amounts, to be calculated by the Clerk of Court, at a rate of 9% per annum, running from 4/3/2014 for the $36,400 award and from 3/19/2017 for the $4,200 award, through the date judgment is entered; (8) attorneys' fees in the amount of $150,080.30; and (9) costs in the amount of $8,239.46.  The Court also grants Plaintiff's request for post-judgment interest and an automatic increase in the total judgment amount for NYLL violations should Defendants fail to make timely payment as prescribed by the statute.

SO ORDERED.


*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  September 25, 2023
           Brooklyn, New York